UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHERI RODGERS, | ) | |
| | ) | |
|      Plaintiff, | ) | |
| | ) | |
|      vs. | ) | Case No. 4:11CV0515 JAR |
| | ) | |
| UNIVERSITY OF MISSOURI BOARD OF | ) | |
| CURATORS, et al., | ) | |
| | ) | |
|      Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim Upon Which Relief May Be Granted ("Motion"; ECF No. 71).   This matter is fully briefed and ready for disposition.[1]

**STANDARD FOR MOTION TO DISMISS**

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint liberally in the light most favorable to the plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto Servs., 432 F.3d 866, 867 (8th Cir. 2005)).  Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted).  To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

---

[1]Plaintiff filed a Motion to Deny Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 77), but this appears to be an opposition to Defendants' Motion rather than a separate request for relief.  In any event, Plaintiff's Motion is mooted by this Order.

to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; Huang v. Gateway Hotel Holdings, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry.  First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements."  Id. Second, the Court must determine whether the complaint states a plausible claim for relief.  Id. at 679.  This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct."  Id. The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief."  Id.  When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether the plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred.  Id. at 680-82.

## BACKGROUND

Plaintiff Cheri Rodgers ("Plaintiff") asserts that this lawsuit "addresses Plaintiff's 'unconstitutional' impeachment as president [of the Student Electronic Media Association Organization ('SEMPA')], two months following the election, by Faculty (Defendants Granger and Bechtholdt) and SEMPA members' [sic] (Axton, Ordway, C. Robinson, K. Robinson, S. Engelmeyer, and J. Edwards) who opposed her appointment to office for no other reason than her race.  It also addresses her simultaneous explusion as a long-time SEMPA member in retaliation for her complaints of racial discrimination to the campus administration against her white offenders."

(Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Second Amended Complaint ("Opposition"), ECF No. 76, p. 1).

On September 11, 2009, Plaintiff, an African American graduate student at the University of Missouri St. Louis ("UMSL"), was elected president of SEMPA.  (Second Amended Original Civil Complaint ("Compl."), ECF No. 44, ¶¶5, 26, 27).  As President of SEMPA, Plaintiff had "full power and authority over the SEMPA organization, campus radio station, and UMSL's newly launched TV station."  (Id., ¶27).

During Plaintiff's first few weeks as President of SEMPA, she was subjected to a "hostile work environment, racially discriminatory treatment, and later an assault by a faculty advisor."  (Id., ¶28).  Plaintiff sought intervention from Defendants, but her claims were not investigated.  (Id.).  Specifically, Plaintiff alleges that, as part of this "hostile environment," student SEMPA members Ryan Ordway, John Edwards and Keith Robinson on October 3, 2009, Defendant Marcel Bechtholdt, IT Services Administrator and SEMPA Chief Technical Advisor, recommended that Plaintiff secure a Sergeant at Arms "for her protection" at future meetings.  (Id., ¶50).  Plaintiff alleges that Charles Granger, Student Advisor at UMSL Department of Biology, Bechtholdt, and Ordway "threatened Rodgers with premeditated retaliation and informed her that if she continued with her complaint against any SEMPA offender that she would be met with adverse action before they would as there had already been talks to remove her as president from the SEMPA organization."  (Id., ¶55).[2]

Plaintiff sought to enforce the UM-System's anti-discrimination policy and requested that Office of Student Life Director and the University's Chief Diversity Officer, Miriam Huffman, intervene.  (Id., ¶52).  Plaintiff alleges that Defendant Huffman presided over the October 7, 2009

---

[2]Plaintiff alleges that Bechtholdt "willfully engaged in acts of racial discrimination, created hostile environments, led a conspiracy to deprive her of her rights, breached her student contracts, and prevented her from equally participating in SEMPA."  (Compl., ¶154).

mediation involving Plaintiff, Craig Robinson, Ryan Ordway, and Bechtholdt.  (Id., ¶53).  Plaintiff alleges that Defendant Huffman provided UM-System grievance materials to all parties to allow them to file a formal grievance with a higher campus department after the mediation "failed."  (Id., ¶57).[3]

After the mediation, Plaintiff alleges that her access to the SEMPA office and radio station was removed by Granger and Bechtholdt.  (Id., ¶58).  Plaintiff asserts that Granger and Bechtholdt, along with several SEMPA members, conspired to remove her as president of SEMPA and discourage her from pursuing her discrimination complaint.  (Id.).  Plaintiff claims that the "discriminatory animus" and "hostile environment" culminated in Plaintiff "being openly accosted by Granger on the UMSL campus as she exited the SEMPA office."  (Id.).[4]

Between October 2009 and January 2010, Rodgers filed over thirty verbal and written complaints to Defendants in nine UMSL departments.  (Id., ¶31).  Plaintiff notified the Office of Student Affairs, Student Life, and Student Court of the alleged racial discrimination, harassment, retaliation, hostile environment, assault by a faculty member, and denial of due process and equal protection she had suffered.  (Id., ¶32).  Plaintiff alleges that in the Office of Student Affairs, her complaints were "met with reckless indifference, willful blindness, and deliberately hindered in the furtherance of her racial discrimination grievance against white SEMPA members." (Compl., ¶60). Plaintiff asserts that her grievances were "rejected five (5) times" by Defendant Curtis Coonrod, Vice Provost of Student Affairs, Defendant Orinthia Montague, Associate Vice Provost of Student Affairs and Designated Primary Officer, and Defendant Helen Ward, the Administrative Assistant

---

[3]Plaintiff alleges that Defendant Huffman "planned, engaged in, facilitated, and executed adverse, retaliatory action against Rodgers that breached her student contracts and unconstitutionally impeached her while she was knowingly engaged in protected activity." (Compl., ¶137).

[4]Plaintiff alleges that Granger "repeatedly breached his duty to ensure a non-discriminatory environment within SEMPA and on the UMSL campus and condoned, encouraged, and participated in unlawful practices aimed to deprive Rodgers of equal opportunities, rights and privileges within SEMPA." (Compl., ¶152).

at UMSL's Office of Student Affairs, "within two-weeks for arbitrary and capricious reasons

unrelated to the merits of her allegations." (Id.).[5]  Because her grievances were rejected, Plaintiff

asserts that she was "refused an investigation and unjustly denied due process."  (Id.).

       In November 2009, Plaintiff was impeached from office and expelled as a SEMPA member,

without notice.  (Id., ¶29). In December 2009, Plaintiff reported the "unlawful conduct" and

deprivation of her rights" to Defendants Deborah Nobel-Triplett, Ph.D., UM-System Assistant Vice

President of Academic Affairs, and Defendant Glen Cope, Provost and Vice Chancellor of

Academic Affairs, who immediately transferred the matter to Defendant Tanisha Stevens, Student

Advocate UMSL's Office of Academic Affairs. (Id., ¶67).  Plaintiff asserts that Defendants Triplett,

Cope and Stevens failed "to take any proactive measures in her case and inappropriately referred]

to her [to] Student Court."  (Id., ¶67).[6]  In January 2010, Plaintiff reported the same unlawful

---

[5]Plaintiff alleges that Montague "enjoined [sic] in a conspiracy, led and contributed egregious constitutional and civil rights violations that resulted in Rodgers' repeated denial of 1) access to a fair hearing, 2) an investigation into her racial discrimination claims, 3) access to needed protections, 4) access to campus services, 5) her ability to serve as SEMPA president, inter alia, and 6) protection from hostile discriminatory, and retaliatory environments." (Compl., ¶127). Plaintiff alleges that Defendant Montague maintained a "non-discriminatory [sic] environment in violation of Title VI and UM-System antidiscrimination policies."  (Id., ¶128).

       Likewise, Plaintiff alleges that Coonrod "tolerated, supported, and contributed to the maintenance of a racially discriminatory environment[,] that he received actual and constructive notice existed on the UMSL campus and within SEMPA, were ongoing, and placed Rodgers at risk for future injury [sic]." (Compl., ¶130).  Plaintiff claims that, in breach of his obligations under Title VI, Defendant Coonrod "rejected Rodgers [sic] discrimination complaint without proper review or investigation, denied her routine campus services, impeded her access to due process, intentionally obstructed justice and prevented the furtherance of her police report against a white faculty member, and left her subjected to foreseeable risks of harm, inter alia." (Id.).

       Finally, Plaintiff alleges that Ward "willfully engaged in a conspiracy to deprive Rodgers of her rights to equally benefit from university services and gain access to a fair hearing." (Compl., ¶141). Plaintiff claims that Ward failed to protect Plaintiff from the ongoing discriminatory conduct, thereby breaching Ward's duty to protect her. (Compl., ¶63). Plaintiff maintains that "Ward showed reckless indifference to the reported depravation of Rodgers' rights and then created a harassing environment to hinder the furtherance of Rodgers' discrimination against known white campus offenders."  (Id.).  In an equally conclusory fashion, Plaintiff alleges that "Ward consciously breached her duty, violated campus policies, and infringed upon Rodgers' rights...." (Id., ¶142).

       [6]Plaintiff further maintains that Defendant Nobel-Triplett "consciously breached her legal duty to maintain a non-discriminatory environment and provide Rodgers with needed protections,

conduct to Defendant Deborah Burris, Director of the Office of Equal Opportunity and the University's Chief Diversity Officer, to seek some "intervention, protections, and/or remedies." (Id., ¶68).  Plaintiff asserts that her claims, however, were "unduly delayed, never investigated, systemically dismissed, and denied due process." (Id., ¶68).  Plaintiff alleges that defendants Nobel-Triplett, Cope, Stevens, and Burris caused Plaintiff's complaints and grievances to be dismissed "without proper review or formal written notice to Plaintiff" in violation of Title VI, Amendment XIV, and Sections 1981, 1983, 1985, and 2004. (Id., ¶69).

Plaintiff claims that she reported the purported unlawful conduct to the UMSL campus police, but that Defendant Frank Schmidt and Defendant Brandon Burton, UMSL Campus Police Officers, "threatened to retaliate against Rodgers with an arrest for false reporting to prevent her from filing a formal complaint against an offending white faculty member." (Id., ¶¶147, 151).  Plaintiff alleges that Defendants Schmidt and Burton "refused to investigate Rodgers' allegations of a racially motivated assault" by Granger on Plaintiff. (Id., ¶61).  Plaintiff claims that both Schmidt and Burton abused their power "by threatening to have [Plaintiff] arrested for false reporting if she continued with the complaint." (Id.).[7]

In March 2010, after a hearing, the UMSL Student Court determined that the impeachment of Plaintiff as SEMPA President was improper. (Id., ¶30).  The Student Court, however, refused to reinstate Plaintiff as SEMPA President. (Id.).  Plaintiff alleges that, after a hearing, the UMSL

_____

campus services, and due process." (Compl., ¶132).

[7]Plaintiff alleges that Schmidt and Burton "enjoined [sic] in a conspiracy with Defendant Burton, Student Affairs, Faculty, and SEMPA Defendants, willfully engaged in unlawful conduct that he knew or should have known violated Rodgers' constitutional and civil rights, would cause injury, and furthered racially discriminatory and retaliatory actions by UMSL offenders." (Compl., ¶¶147, 151). Plaintiff claims that she brings suit against Schmidt and Burton for "1) obstruction of justice, engaging in a conspiracy to deprive rights, 3) hindrance and denial of due process, 4) denial of equal protections under the law, 5) threat of retaliation for participating in federally protected activity, 6) creating a hostile environment, 7) failing to investigate her claims, 8) refusing to file a police report, 9) denial of due process, and 10) denial of needed protections after the report of a racially motivated assault." (Id., ¶149).

- 6 -

Student Court "rendered a verdict of 'guilty' against Faculty and SEMPA Defendants for Rodgers' 'unconstitutional' impeachment and membership revocation[.]" (Id., ¶70).  The UMSL Student Court, under Defendant Braddix's supervision, however, "refused to reinstate Rodgers as president and restore her SEMPA membership." (Id., ¶71).[8]  Plaintiff alleges that "[s]aid adverse action was so outrageous that the Court's sanctions resulted in Rodgers receiving the harshest punishment that the Court could render through it had been proven that she 1) was innocent, 2) had not committed any wrong-doing, 3) was a victim of disparate treatment and other constitutional torts, 4) was subjected to hostile environments, 5) was retaliated against, 6) and was assaulted by faculty." (Id.).

No remedial action was taken by Defendants, and Plaintiff alleges that these issues continued and worsened.  (Id., ¶¶32-33).

## DISCUSSION

I.   **§§1981, 1983, 1985, 1986, Fourteenth Amendment and State Law Claims against the Individual Defendants in their "Official Capacities," the Curators of the University of Missouri System, and SEMPA**

In her Complaint, Plaintiff alleges that the Curators of the University of Missouri System ("Curators") and SEMPA discriminated against her "in violation of Title VI, Amendment XIV Equal Protection & Due Process, and Sections 1981, 1983, 1985, and 2004." (Compl., ¶¶123, 126). Defendants assert that Plaintiff's §§1981, 1983, 1985, 1986, Fourteenth Amendment and state law claims against the Curators, SEMPA, and the individual defendants in their "official capacities" are barred by sovereign immunity.

"The sovereign immunity of the States recognized in the Eleventh Amendment bars any suit brought in federal court against a state or state agency, regardless of the nature of the relief sought,

---

[8]Defendant D'Andre Braddix is the UMSL Student Court Advisor, Student Life Project Support Specialist, Assistant to Vice Provost, and Designated Primary Officer.  (Compl., ¶9). Plaintiff alleges that Braddix had knowledge that Faculty and SEMPA Defendants "engaged in a conspiracy to deprive her of her rights and knew that they [sic] the group failed to proffer a legitimate, non-discriminatory reason to justify her removal from office."  (Id., ¶72).

unless Congress has abrogated the states' immunity or a state has consented to suit or waived its immunity." Tinzie v. Ark. Dep't of Workforce Servs., No: 4:11CV00683 SWW, 2012 U.S. Dist. LEXIS 68313, at *6 (E.D. Ark. May 16, 2012)(citing Seminole Tribe v. Florida, 517 U.S. 44, 74, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984); Edelman v. Jordan, 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974)).[9]  "In addition to barring all claims brought directly against a state or state agency, the Eleventh Amendment protects state officials sued in their official capacities from all claims, with the exception of certain claims for prospective, equitable relief." Tinzie, 2012 U.S. Dist. LEXIS 68313, at *6-7 (citing Murphy v. Arkansas, 127 F.3d 750, 754 (8th Cir. 1997)).

To the extent that Plaintiff alleges claims under §§1981, 1983, 1985, 1986, Fourteenth Amendment and state law claims against the Curators, SEMPA and the individual Defendants in their "official capacities," those claims are barred by sovereign immunity.  See Sallis v. Univ. of Minn., 322 F. Supp. 2d 999, 1005 (D. Minn. 2004)  ("Because the University is an instrumentality of the State, see Treleven v. University of Minnesota, 73 F.3d 816, 818-19 (8th Cir. 1996), the § 1981 claim is barred by the Eleventh Amendment, see Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 618-19 (8th Cir. 1995)."); Jacobsen v. DOT, 332 F. Supp. 2d 1217, 1235 (N.D. Iowa 2004) (doctrine of sovereign immunity precludes plaintiff's claims under 42 U.S.C. § 1983 against the state defendants in their official capacities); Begun v. State Bd. of Registration for Healing Arts, 531 F. Supp. 955, 956 (E.D. Mo. 1982)(the immunity provided by the Eleventh Amendment has not been

---

[9]The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

abrogated by 42 U.S.C. § 1983 or by 42 U.S.C. § 1985); see also § 537.600 R.S.Mo.(2012)(the State of Missouri has not consented to waive its sovereign immunity).

      Likewise, the fact that Congress enacted Title VI does not waive sovereign immunity with respect to the federal civil rights acts. See Martin v. Clemson Univ., 654 F. Supp. 2d 410, 428 (D.S.C. 2009)("While Congress ... has secured a waiver of Eleventh Amendment immunity as a condition of Clemson's receipt of federal financial assistance condition under Titles VI and IX, ..., Congress has not overridden the States' immunity with respect to the plaintiff's claims under 42 U.S.C. §§ 1981, 1983, 1985 or 1986, nor has South Carolina consented to suit in federal court on these or any of the plaintiff's state law claims.")(internal citations omitted). Thus, the Court finds that, to the extent that Plaintiff alleges any causes of action under §§1981, 1983, 1985, 1986, Fourteenth Amendment and State Law Claims against the Curators, SEMPA and the individual Defendants in their "official capacities," those claims are barred by sovereign immunity and dismissed.

## II.    Title VI

      Title VI of the Civil Rights Act of 1964 prohibits race discrimination in any program receiving federal funds:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d (1982).[10] Schools accepting federal financial assistance must comply with the requirements of Title VI. Radcliff v. Landau, 883 F.2d 1481, 1483 (9th Cir. 1989); Lau v. Nichols, 414 U.S. 563, 566-67 (1974). Under the regulations adopted by the Department of Education,[11]

---

[10]This provision is also referred to as Section 601 of Title VI.

[11]"Each Federal department and agency which is empowered to extend Federal financial assistance to any program or activity, by way of grant, loan, or contract other than a contract of insurance or guaranty, is authorized and directed to effectuate the provisions of section 2000d of this title with respect to such program or activity by issuing rules, regulations, or orders of general

"[e]very application for Federal financial assistance to which this part applies ... and every application for Federal financial assistance to provide a facility shall, as a condition to its approval and the extension of any Federal financial assistance pursuant to the application, contain or be accompanied by an assurance that the program will be conducted or the facility operated in compliance with all requirements imposed by or pursuant to this part." 34 C.F.R. §100.4. The Act provides for a broad concept of "program or activity" by adding to Title VI an explicit definition for that phrase:

> For the purposes of this subchapter, the term "program or activity" and the term "program" mean all the operations of --
> . . .
> (2)(A) a college, university, or other postsecondary institution, or a public system of higher education .
> ...
> any part of which is extended Federal financial assistance.

42 U.S.C. § 2000d-4a.

Receipt of federal financial assistance by any student or portion of a school thus subjects the entire school to Title VI coverage. Radcliff, 883 F.2d at 1483; see Scarlett v. Sch. of the Ozarks, Inc., 780 F. Supp. 2d 924, 933 (W.D. Mo. 2011)("Congress enacted the Civil Rights Restoration Act of 1987 to make clear that the term 'program or activity' includes all of an entities' operations, thus any university receiving federal funds may not discriminate against any person in any of its programs on the basis of race, color, or national origin.")(citing DeVargas v. Mason & Hanger-Silas Mason Co., Inc., 911 F.2d 1377, 1383-84 (10th Cir. 1990)).  Private individuals may sue to enforce § 601 of Title VI and obtain both injunctive relief and damages.  Alexander v. Sandoval, 532 U.S. 275, 279 (2001).  Thus, the Court must look at Plaintiff's claims against each defendant to determine if she states a claim under Title VI.

applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken."  42 U.S.C. §2000d-1.

### A.        Individual Defendants

"[I]ndividuals cannot be held personally liable under Title VI." <u>Ajiwoju v. Cottrell</u>, No. 04-0715-CV-W-FJG, 2005 U.S. Dist. LEXIS 33422, at *3-4 (W.D. Mo. May 2, 2005); <u>Shotz v. City of Plantation</u>, 344 F.3d 1161, 1170 (11th Cir. 2003)("By extension, the text of Title VI also precludes liability against those who do not receive federal funding, including individuals"); <u>Buchanan v. City of Bolivar</u>, 99 F.3d 1352, 1356 (6th Cir. 1996)("Plaintiff's claim also fails because she asserts her claim against Lawson and Weaver and not against the school, the entity allegedly receiving the financial assistance"); <u>N.J. Sand Hill Band of Lenape & Cherokee Indians v. Corzine</u>, No. 09-683 (KSH), 2010 U.S. Dist. LEXIS 66605, at *60 (D.N.J. June 30, 2010)("The Court agrees that individuals are not the proper defendants in a Title VI case."); <u>Gomiller v. Dees</u>, No. 4:06CV33-D-B, 2007 U.S. Dist. LEXIS 23230, at *11 (N.D. Miss. Mar. 28, 2007)("the Court finds that individual liability does not lie in Title VI"); <u>Steel v. Alma Public School Dist.</u>, 162 F. Supp.2d 1083, 1085 (W.D. Ark. 2001)("[I]n the Title IX context, that school officials may not be sued in their individual capacities. .... As Title IX and Title VI are parallel to each other and operate in the same manner.").[12]  That is, federal court generally have held that "'the proper defendant in a Title VI case is an entity rather than an individual'" <u>Langadinos v. Appalachian Sch. of Law</u>, No. 1:05CV00039, 2005 U.S. Dist. LEXIS 20958, at *17 (W.D. Va. Sept. 25, 2005)(quoting <u>Farmer v. Ramsay</u>, 41 F. Supp. 2d 587, 592 (D. Md. 1999)).

Plaintiff concedes that courts have held that Title VI suits may not be brought against defendants in their individual capacities, but contends that "this rule is not absolute."  (Opposition, p. 7).  Plaintiff, however, does not cite any case law recognizing a Title VI cause of action against an individual.  Based upon the overwhelming case law declining to recognize a Title VI cause of

---

[12]<u>See</u> <u>Barnes v. Gorman</u>, 536 U.S. 181, 185 (2002) ("the Court has interpreted Title IX consistently with Title VI").

action against an individual, the Court finds that Plaintiff's Title VI claims against the individuals in their individual capacities fail as a matter of law and are dismissed.

**B.      Curators and SEMPA**

"To establish a prima facie case of discrimination under Title VI, the plaintiff must show (1) that the defendant is receiving federal funds, (2) that the plaintiff was discriminated against, and (3) the plaintiff's race, color, or national origin was the motive for the discriminatory conduct." Scarlett, 780 F. Supp. 2d at 933-934 (citing Tolbert v. Queens Coll., 242 F.3d 58, 69 (2d Cir. 2001); Jackson v. Conway, 476 F. Supp. 896, 903 (E.D. Mo. 1979); Thompson v. Bd. of the Special School Dist. No. 1, 144 F.3d 574, 581 (8th Cir. 1998)).

Defendants argue that Plaintiff's Title VI claims against the Curators and SEMPA fail because Plaintiff merely alleges that they were negligent.  (Defendants' Reply in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim Upon Which Relief May be Granted ("Reply"), ECF No. 80, pp. 5-6).  In the alternative, Defendants argue that Plaintiff cannot impute liability against the Curators and SEMPA based upon the alleged negligence of their agents and/or employees.  (Defendants' Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim Upon Which Relief May Be Granted ("Memorandum"), ECF No. 72,  pp. 8-9; Reply, p. 6 (citing Santos v. Peralta Cmty. College Dist., No. C-07-5227, 2009 U.S. Dist. LEXIS 106143, at *21 (N.D. Cal. Nov. 13, 2009)("the Court concludes that a theory of vicarious liability is not viable under Title VI, just as such a theory is not viable under Title IX")).

The Court finds that Plaintiff fails to state a claim against SEMPA and the Curators. "[R]ather than asserting a claim alleging that [SEMPA's or the Curators'] policies or general practices are discriminatory, [Plaintiff] seeks to hold [SEMPA and the Curators] accountable for the acts of [their] employees."  Goonewardena v. New York, 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2007).

SEMPA and the Curators cannot be held vicariously liable under Title VI for the actions of individual actors. Santos, 2009 U.S. Dist. LEXIS 106143, at *21; Earl v. Fresno Unified Sch. Dist. Bd. of Educ., No. 1:11-CV-01568-LJO-GSA, 2012 U.S. Dist. LEXIS 64537, at *11-12 (E.D. Cal. May 7, 2012); Vouchides v. Houston Cmty. College Sys., H-10-2559, 2011 U.S. Dist. LEXIS 112609, at *17-18 (S.D. Tex. Sept. 30, 2011); Manuel v. City of Bangor, No. 09-CV-339-B-W, 2009 U.S. Dist. LEXIS 98031, at *11-12 (D. Me. Oct. 21, 2009); Hurd v. Del. State Univ., No. 07-117-MPT, 2008 U.S. Dist. LEXIS 73448, at *20 (D. Del. Sept. 25, 2008); Goonewardena, 475 F. Supp. 2d at 328. "An institution is only liable if it intentionally harassed or discriminated on the basis of race or nationality." Hurd, 2008 U.S. Dist. LEXIS 73448, at *20. Plaintiff does not allege that SEMPA or the Curators discriminated "as an entity" against Plaintiff or that their "policies" or "general practices" were discriminatory. Vouchides, 2011 U.S. Dist. LEXIS 112609, at *18; Goonewardena, 475 F. Supp. 2d at 328. Because Plaintiff alleges only vicarious liability against SEMPA and the Curators, her Title VI claims against them fail to state a claim and are dismissed.

## III.    Individual Capacity Claims Under §§1981, 1983, 1985, 1986

### A.    42 U.S.C. § 1981 Claim

To establish a right to relief under § 1981, a plaintiff must show (1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts. Pryor v. NCAA, 288 F.3d 548, 569 (3d Cir. 2002). The standard for establishing an "intent to discriminate on the basis of race" is identical in the Title VI and § 1981 contexts. Id.

Plaintiff seems to allege that her election as President of SEMPA constituted a "contract." Plaintiff states that she was elected on September 11, 2009, but she was "unable to enjoy or benefit from her new Presidential contract due to the disparate treatment she was immediately subjected to by Faculty and SEMPA Defendants who opposed her election to office because of her race." (Compl., ¶49; Opposition, p. 1 ("Plaintiff entered in to [sic] a contract with SEMPA and agreed to serve in the position [of President] for one year.")).

Defendants admit that Plaintiff alleges that "various 'contracts' were breached, or that she was otherwise unable to enter into some particular 'contracts[.]'" (Reply, p. 6).  Defendants, however, claim that Plaintiff's Complaint "fails to properly allege the existence of any contract." (Id., p. 6).  Defendants claim that "Plaintiff's §1981 claims against the individual Defendants fail because she has not alleged the existence of any contract which she was allegedly prevented from entering into or which was breached."  (Id., p. 5).

Section "1981 prohibits racial discrimination in 'all phases and incidents' of a contractual relationship[.]'" Gregory v. Dillard's, Inc., 565 F.3d 464, 468 (8th Cir. 2009)(quoting Rivers v. Roadway Express, Inc., 511 U.S. 298, 302 (1994)).  When raised directly against a state actor, however, a §1981 claim must be brought under §1983. Jones v. McNeese, 675 F.3d 1158, 1160, n.1 (8th Cir. 2012)(citing Lockridge v. Bd. of Trs., 315 F.3d 1005, 1007 (8th Cir. 2003); Artis v. Francis Howell North Band Booster Ass'n, 161 F.3d 1178, 1181 (8th Cir. 1998)).  The Court finds that §1983 provides the vehicle for all of Plaintiff's purported §1981 claims in this case, and her §1981 claims, therefore, are dismissed.  See Jones, 675 F.3d at 1160, n.1.

Moreover, even if the Court were to consider Plaintiff's §1981 claim, it fails as a matter of law.  Plaintiff's allegations are essentially that Defendants discriminated against her and treated her differently because of her race, African-American.  Plaintiff, however, does not identify any similarly-situated individuals who Defendants treated more favorably, which dooms her claim.

"[T]o support a claim of selective enforcement [a plaintiff] must allege purposeful and systematic discrimination by specifying instances in which [she was] singled out for unlawful oppression in contrast to others similarly situated." Odom v. Columbia Univ., 906 F. Supp. 188, 194 (S.D.N.Y. 1995)(citations omitted).  Plaintiff's Complaint presents only general and conclusory accusations of race-based discrimination and unequal treatment, which do not state a claim under §1981.  Id. "A mere factual assertion of unequal treatment or race-motivated conduct is insufficient to survive a Rule 12(b)(6) motion; instead, a plaintiff must specifically allege the 'circumstances giving rise to a plausible inference of racially discriminatory intent.'"  Id. at 195 (quoting  Yusuf v. Vassar College, 35 F.3d 709, 713 (2d Cir. 1994)).  Plaintiff fails to alleges facts that support her bare accusations of unequal treatment.  Accordingly, the Court dismisses Plaintiff's §1981 claims on this basis as well.

> **B.   42 U.S.C. § 1983 Claims**

 The Fourteenth Amendment of the United States Constitution provides that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  In turn, 42 U.S.C. § 1983 provides a cause of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected" any person to the deprivation of any right protected by federal law or the United States Constitution.

Interpreting Plaintiff's claims broadly, the Court construes Plaintiff's Complaint as alleging §1983 violations based upon the Due Process and Equal Protection Clauses of the Constitution. See Clark v. Iowa State Univ., 643 F.3d 643, 644 (8th Cir. 2011)(affirming the district court's finding

that "claims against State entities and their officials for due process and equal protection violations may, in fact, only be asserted under the auspices of [42 U.S.C.] § 1983.").

### 1.    Due Process Claims

"To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." Hahn v. Star Bank, 190 F.3d 708, 716 (6th Cir. 1999)(citing Zinermon v. Burch, 494 U.S. 113, 125-26, 108 L. Ed. 2d 100, 110 S. Ct. 975 (1990)); Mulvenon v. Greenwood, 643 F.3d 653, 657 (8th Cir. 2011)(quoting Davenport v. Univ. of Ark. Bd. of Trs., 553 F.3d 1110, 1114 (8th Cir. 2009)("To establish a violation of procedural due process, a plaintiff must show that he has been deprived of a constitutionally protected life, liberty or property interest.").

Here, Plaintiff alleges that between October 2009 and January 2010, Plaintiff filed over thirty verbal and written complaints to Defendants, providing them "actual and constructive notice of her subjection to racial discrimination, harassment, retaliation, hostile environments, and assault by a faculty member" but no action was taken to investigate her claims or to rectify the situation. (Compl., ¶32). Plaintiff, however, has not identified an interest protected by the Due Process Clause of the Constitution.  Plaintiff merely alleges that she was deprived of serving as the President and as a member of SEMPA.  This deprivation does not implicate, nor has Plaintiff identified, any due process interest.  See Board of Curators of University of Missouri v. Horowitz, 435 U.S. 78, 82 (1978) ("To be entitled to the procedural protections of the Fourteenth Amendment, respondent must in a case such as this demonstrate that her dismissal from the school deprived her of either a 'liberty' or a 'property' interest.").  Because Plaintiff lacks a constitutionally-protected interest in being the

President or a member of SEMPA, she cannot establish a due process violation.  See Forrester v. Bass, 397 F.3d 1047, 1054 (8th Cir. 2005) ("Only if we find a protected interest do we examine whether the deprivation of the protected interest was done in accordance with due process."); Singleton v. Cecil, 176 F.3d 419, 424 (8th Cir. 1999) (en banc) (stating that "the possession of a protected life, liberty, or property interest is a condition precedent to any due process claim" (quotation, alterations, and citation omitted)).  Accordingly, the Court dismisses Plaintiff's 14th Amendment Due Process claim as to all Defendants.[13]

In addition, even if Plaintiff stated a due process interest, the purported breach of Plaintiff's "contract" as president of SEMPA cannot constitute a Due Process Clause violation.  "[A] simple breach of contract does not rise to the level of a constitutional deprivation." Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 446 (8th Cir. 1995)(citing Medical Laundry Serv. v. Board of Trustees of Univ. of Ala., 906 F.2d 571, 573 (11th Cir. 1990)).  "[T]he assertion that any time one has an enforceable contract to which the State is a party, there is constitutionally protected property interest under that contract . . . is inconsistent with the concept of the Fourteenth Amendment." Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 446 (8th Cir. 1995)(citation omitted). "[I]f every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contractual claims against public entities." Blase v. City of Neosho, No. 10-03311-CV-S-JTM, 2011 U.S. Dist. LEXIS 119537, at *7 (W.D. Mo. Oct. 17, 2011)(quoting Reich v. Beharry, 883 F.2d 239, 242 (3d Cir. 1989)).  See

---

[13]Although not argued to the Court, the allegations before the Court indicate that Plaintiff was afforded procedural due process sufficient to satisfy the Fourteenth Amendment.  See, e.g., Horowitz, 435 U.S. at 84-85 ("Assuming the  existence of a liberty or property interest, respondent has been awarded at least as much due process as the Fourteenth Amendment requires.").  Plaintiff participated in mediation and presented her claims before the Student Court.  It is unclear what additional due process she claims should have been provided.

also Reich, 883 F.2d at 242 ("a wholesale federalization of state public contract law seems far afield from the great purposes of the due process clause").  Given that Plaintiff alleges only a breach of her alleged presidential contract, the Court finds that Plaintiff cannot state a claim for a procedural due process violation.

**2.    Equal Protection Claims**

"'In general, the Equal Protection Clause requires that state actors treat similarly situated people alike.'" Habhab v. Hon, 536 F.3d 963, 967 (8th Cir. 2008)(quoting Bogren v. Minnesota, 236 F.3d 399, 408 (8th Cir. 2000)); City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Barstad v. Murray County, 420 F.3d 880, 884 (8th Cir. 2005).  "'State actors may, however, treat dissimilarly situated people dissimilarly without running afoul of the protections afforded by the clause.'" Habhab, 536 F.3d at 967 (quoting Bogren, 236 F.3d at 408).  The Supreme Court recognizes an equal protection claim for discrimination against a "class of one." Village of Willowbrook v. Olech, 528 U.S. 562, 564, 145 L. Ed. 2d 1060, 120 S. Ct. 1073 (2000). The purpose of a class-of-one claim is "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Id. It is recognized law that a class-of-one claimant may prevail by showing "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id.; see also Costello v. Mitchell Public School Dist. 79, 266 F.3d 916, 921 (8th Cir. 2001).

Broadly, Plaintiff alleges that "because of her [African American] race, [she] was deprived the equal opportunity to participate in, benefit from or gain access to University programs, services and facility by authorized state actors, a student organization, and the Board of Curators."  (Compl., ¶26). Plaintiff, as a threshold matter, must demonstrate Defendants treated her less favorably than similarly-situated members of SEMPA based upon Plaintiff's race. Habhab, 536 F.3d at 967;

- 18 -

Bogren, 236 F.3d at 408.  Plaintiff does not identify any person who was treated more favorably than her.[14]  For this same reason, even if Plaintiff's Complaint is construed as asserting a "class of one" violation, Plaintiff does not state a claim.  Plaintiff, therefore, does not state a claim under the Equal Protection Clause and it is dismissed.

With respect to SEMPA and the Curators,[15] the Court also finds that Plaintiff fails to state a claim because she has not alleged a policy or custom that violated the law and caused her injury.  See Artis v. Francis Howell North Band Booster Ass'n, 161 F.3d 1178, 1181 (8th Cir. 1998).  To be liable, Plaintiff must prove that SEMPA's or the Curator's "policy or custom was the moving force behind the constitutional violation."  Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999)(quotation and citation omitted).  "A 'policy,' for purposes of § 1983, is 'an official policy, a deliberate choice of a guiding principle or procedure made by an official with authority.'"  Gardner v. Corr. Med. Servs., No. 5:12CV00177 JMM/BD, 2012 U.S. Dist. LEXIS 87270, at *4 (E.D. Ark. May 24, 2012)(quoting Mettler, 165 F.3d at 1204).  "'Custom' means a 'persistent, widespread pattern of unconstitutional conduct of which officials have notice and subsequently react with deliberate indifference or tacit authorization.'"  Gardner, 2012 U.S. Dist. LEXIS 87270, at *5 (quoting Johnson v. Outboard Marine Corp., 172 F.3d 531, 536 (8th Cir. 1999)).

Here, Plaintiff fails to allege a policy or custom and, therefore, she fails to state a claim under §1983.  All of the specific allegations found in Plaintiff's Complaint involve isolated actions by individual actors.  See, e.g., Compl., ¶128 ("Montague's unlawful conduct supported and contributed to the establishment of a firm University custom that routinely deprives aggrieved black students

---

[14]Plaintiff only alleges that "Faculty and SEMPA Defendants ... replace[d] Rodgers as president with a white, less-qualified SEMPA member, Defendant Tiffany Axton, who had just joined the organization two months prior." (Compl., ¶65).  Plaintiff does not allege that Axton was treated more favorably than her.
[15]The Court dismissed the §1983 claims against SEMPA and the Curators on qualified immunity grounds, but this provides another basis for dismissing the §1983 claim against these defendants.

- 19 -

of their equal rights and thwarts their attempts to file racial discrimination complaints and seek due process within the UM-System."). Plaintiff's broad and conclusory allegations are insufficient to demonstrate a policy or custom. Plaintiff has not alleged that a SEMPA or Curators' policy, custom, or official action caused her injury. Plaintiff does not allege that a policy or custom was promulgated by someone with authority or that it was persistent and widespread. Rather, Plaintiff simply alleges that several individual actors discriminated against her. For these reasons, Plaintiff has not made a prima facie §1983 equal protection claim against SEMPA or the Curators, and the Court grants Defendants' Motion to Dismiss.

  **C.**  **42 U.S.C. §§ 1985, 1986 Claims**

  Title 42 U.S.C. § 1985 grants a civil cause of action for damages caused by various types of conspiracies aimed at injuring a person in his/her person or property, or denying him/her a Federal right or privilege. At best, Plaintiff attempts to assert a cause of action under §1985(3) for conspiracy to deprive a person of rights and privileges. To show a civil rights conspiracy under §1985(3), Plaintiff must prove: (1) the defendants conspired, (2) with the intent to deprive them, either directly or indirectly, of equal protection of the laws, or equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) that they or their property were injured, or they were deprived of exercising any right or privilege of a citizen of the United States. See Barstad v. Murray County, 420 F.3d 880, 887 (8th Cir. 2005); Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996). A claim under §1985(3) requires proof of invidious discriminatory intent and a violation of a serious constitutional right that is protected from official and private encroachment. Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68 (1993). The list of rights to which §1985 applies is reserved to claims involving racial or class-based invidiously discriminatory animus. Id.

- 20 -

"[Title] 42 U.S.C. § 1986, a companion statute to § 1985, allows an action against a party who knows that a § 1985 deprivation will occur, has the power to prevent it, and fails to do so." Kaminsky v. Missouri, No. 4:07-CV-1213, 2007 U.S. Dist. LEXIS 75763, at *17 (E.D. Mo. Oct. 11, 2007).  "In order to state a claim for a § 1986 violation, Plaintiff must first state a claim for a § 1985 violation."  Id. (citing McIntosh v. Ark. Republican Party-Frank White Election Comm., 766 F.2d 337, 340 (8th Cir. 1985)); Barstad, 420 F.3d at 887 (a §1986 claim must be predicated upon a valid § 1985 claim); Jensen v. Henderson, 315 F.3d 854, 863 (8th Cir. 2002)(same).

Defendants assert that Plaintiff's §§1985 and 1986 claims against the individual defendants fail because she has not alleged that any of the individual Defendants formed any agreement to take any specific action in violation of any of Plaintiff's rights.  (Reply, p. 5). This Court agrees.  Plaintiff has not alleged a meeting of the minds of any defendants to pursue a specific discriminatory or retaliatory end.  Plaintiff's conclusory allegations are insufficient to support a conspiracy claim. Because Plaintiff's §1985(3) claim fails, her §1986 claim also fails. See, e.g., Kaylor v. Fields, 661 F.2d 1177, 1184 (8th Cir.1981) (cause of action under § 1986 is dependent on valid claim under § 1985). Accordingly, Plaintiff's §§1985 and 1986 claims against Defendants are dismissed.

## IV.    State Law Claims

Plaintiff purports to assert a state law claim for intentional infliction of emotional distress against Granger (and possibly other defendants).[16]  Defendants claim that Plaintiff has not alleged the elements of a claim for intentional infliction of emotional distress.  (Memorandum, pp. 17-18). The Court has dismissed all of Plaintiff's federal claims and declines to exercise supplemental

---

[16]It is unclear from Plaintiff's Complaint who are the proper defendants to her intentional infliction of emotional distress claim.  Defendants only address Plaintiff's claim with respect to Defendant Granger.  See Memorandum, pp. 17-18.

jurisdiction over Plaintiff's state law intentional infliction of emotional distress claim, which is dismissed without prejudice.  <u>See</u> 28 U.S.C. §1367.[17]

**<u>CONCLUSION</u>**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim Upon Which Relief May Be Granted [71] is **GRANTED**.  An appropriate order of dismissal is filed simultaneously herewith.

**IT IS FURTHER ORDERED** that Motion to Deny Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [77] is **DENIED** as moot.

Dated this 4th day of September, 2012.


_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

---

[17]In the Court's Order, dated August 31, 2011, the Court held that Plaintiff's claims against the individual SEMPA members were frivolous because the members are not state actors.  (ECF No. 50, p. 3).  Therefore, the Court does not address Plaintiff's purported claims against Ethan Chou, Craig Robinson, Keith Robinson, Tiffany Axton, Ryan Ordway, Stephen Engelmeyer, and John Edwards.